Filed 10/7/25  Osborne v. Los Angeles County CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| GLORIA OSBORNE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES COUNTY,<br><br>    Defendant and Respondent. | B332289<br><br>Los Angeles County<br>Super. Ct. No. 20STCV43006 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Serena R. Murillo, Judge.  Affirmed.

Miner Legal, Shelby L. Miner; Public Employees Legal, Oshea V. Orchid for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz, & Su, Avi Burkwitz, Irene Yousefi, and Elizabet Saakyan for Defendant and Respondent.

_____

Gloria Osborne used to work for the Los Angeles County Department of Health Services. She appeals the trial court's decision to grant the County's summary judgment motion disposing of her disability discrimination and retaliation claims, arguing the court failed to view the facts in the light most favorable to her and erroneously applied the Government Tort Claims Act to her claims under the California Fair Employment and Housing Act (FEHA). The County's response points to Osborne's admission that she was using cocaine and alcohol before the County placed her on a paid administrative leave—a legitimate nondiscriminatory reason that largely defeats Osborne's claims. Osborne did not file a reply brief. We affirm.

I

Our recounting of the facts liberally construes evidence in Osborne's support and resolves doubts in her favor. (See *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716–717.)

Osborne started working for the County in March 2016 as a psychiatric social worker. Her duties included conducting individual and family therapy sessions, providing psychosocial evaluations, and crisis intervention for adult and adolescent patients.

In March 2017, Osborne believed another County employee had forged a patient's signature on a medical record release form and lied about it to his attending physician. Osborne reported this to her direct supervisor Joyce Williams.

In April 2017, a doctor diagnosed Osborne with Adjustment Disorder with Mixed Anxiety and Depressed Mood and Posttraumatic Stress Disorder. These mental health disabilities required her to take time off work in April and May 2017. According to Osborne, she left work early only on two occasions

due to her mental health disabilities and missed work a few more days because of an emergency root canal.  However, Williams testified there were many other documented instances of Osborne taking unapproved time off without advance notice in April and May 2017.  Williams further testified there were times when Osborne would come to work and "for whatever reason decided she needs to leave and she just left, maybe signing in around 8:00 and leaving around noon."

Also in April and May 2017, Osborne sent Williams over 60 text messages.  Williams did not understand the messages, which included pictures of Trump and Obama, and messages about black men, black men's dealings with abortions, some of Osborne's teachers, and the Panama Canal.  Osborne had never sent Williams text messages like this before.

Because of Osborne's bizarre text messages and unexcused absences, Williams referred Osborne to the County's Performance Management Unit, which assists management in the investigation and consideration of employee discipline.  According to the County's Policies and Procedures, more than one unscheduled absence per month could result in disciplinary action.

On May 30, 2017, the County placed Osborne on paid administrative leave, pending investigation by the Performance Management Unit for possible violation of County policies.

While on leave, Osborne received treatment for her mental health disabilities.

In July 2018, Lizette McKenzie, a County investigator, interviewed Osborne about her absences and text messages.  Osborne told McKenzie that she took time off work only because of her medical issues, that she had been getting regular

3

treatment, and that she had been stable for several months. Osborne also told McKenzie she was ready to return to work, and McKenzie responded that Osborne would need to submit to a Fitness-for-Duty Evaluation.

In September 2018, Osborne got a note from Dr. Carl Totten, a clinical psychologist who had treated her, opining that she was "cleared to return to work in her usual and customary employment." She provided this note to McKenzie.

In November 2018, Osborne underwent a Fitness-for-Duty Evaluation and provided her medical records to the County. The evaluation entailed an in-depth clinical interview, psychological tests, and analysis of treatment records to determine whether Osborne could return to duty. In reviewing Osborne's medical records, the County learned Osborne had been consistently abusing cocaine and alcohol starting in June 2017. A May 30, 2018 report from Osborne's doctor diagnosed her with "severe alcohol use disorder" and "severe cocaine use disorder," and found her "positive for substance abuse." In August 2018, when Osborne asked her doctor for a "medical clearance to return to work," the doctor declined because she recently had a relapse with cocaine usage and was continuing to abuse alcohol. Upon learning of Osborne's substance abuse, the County determined her unfit to perform the duties of a psychiatric social worker.

In January 2019, the County enumerated the following work restrictions: Osborne could not interact with patients, drive any car during work hours, and had to submit to random drug testing. After six months of these restrictions, Osborne would be eligible for a re-evaluation.

The County did not inform Osborne of the work restrictions until November 2019, when the County took her off

4

administrative leave and offered her a position in Laundry Services. Osborne initially accepted the Laundry Services position but called in sick when she was supposed to report for duty. After Osborne presented the County with a letter from her doctor listing work restrictions that were incompatible with the Laundry Services job, she asked the County for an accommodation. The County was unable to find a position that accommodated Osborne's work restrictions, so it accommodated her by placing her on leave.

Osborne repeatedly asked the County to return her to her original job and retained counsel. Through counsel, in January 2020, she provided a letter dated November 20, 2019 from Dr. Markus Horvath, which cleared her "to return to [her] previous work as a social worker full time" and a December 5, 2019 letter from Dr. Totton recommending that Osborne "return to work in [her] usual capacity at this time."

In response, the County sent Osborne a letter informing her that in order to return her to work, the County would need to conduct another Fitness-For-Duty Evaluation. The County's letter stated it was in the process of scheduling the evaluation, and pending those results, it would place her on paid administrative leave effective January 2020.

In February 2020, Osborne's counsel requested an interactive process meeting. The County acknowledged receipt of the request and said someone would reach out to schedule the meeting.

In April 2020, Osborne resigned.

In November 2020, Osborne sued the County, alleging disability discrimination, retaliation, failure to provide reasonable accommodations, failure to engage in a good faith

interactive process, failure to prevent discrimination under FEHA, Government Code section 12900 et seq., and whistleblower retaliation under Labor Code section 1102.5. She claimed the County constructively terminated her and unlawfully discriminated against her based on her disabilities and because she had reported forgery by a fellow County employee.

During her December 2021 deposition, Osborne admitted she came to work under the influence of cocaine in April 2017, and that she used cocaine and alcohol in April and May 2017. Her reason for using cocaine was because a friend had told her it would "help [her] reduce [her] stress." In addition to the drug use, Osborne testified that she sought therapy and counseling. She also admitted her mental health symptoms got better once she stopped using cocaine and alcohol. When the County's attorney asked if a person testing positive for cocaine on multiple occasions would be able to perform their job, Osborne conceded she did not think this person could complete their job duties, and that it was important for her to not be under the influence of any drugs as a psychiatric social worker.

The County moved for summary judgment, arguing it had a legitimate business reason for placing Osborne on paid administrative leave and refusing to return her to her original position: Osborne's admission that she came to work under the influence of cocaine in April 2017. Because of her drug use, Osborne was not able to perform the essential functions of her position. The County also pointed out Osborne did not ask for any accommodation until November 2019 when it offered her the Laundry Services position, it accommodated her by placing her on leave, and she resigned before it could schedule her second Fitness-For-Duty Evaluation.

6

The trial court granted the County's motion.  The court also applied the six-month statute of limitations from the Government Tort Claims Act to Osborne's FEHA claims, finding it barred consideration of any adverse employment action by the County in 2017, 2018, and 2019 because she did not file her Government Tort Claim until August 25, 2020, and did not seek leave of the court to file a late claim.  This appeal followed.

II

Our review of the trial court's decision to grant the County's motion is independent.  (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  We consider all the evidence and all the inferences we may reasonably draw from it in the light most favorable to Osborne.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  Even so, we affirm the trial court here because of the fatal flaws in Osborne's opening brief and because undisputed facts in the record refute her claims.

Osborne's opening brief completely disregards basic appellate procedure.  First, it omits any mention of her substance abuse from 2017 to 2019—a significant and undisputed fact.  The California Rules of Court require an appellant's opening brief to contain a summary of *all* relevant facts.  (See *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531; Cal. Rules of Court, rule 8.204(a)(2)(C).)  The leading California appellate practice guide advises counsel that "material omissions of the relevant facts . . . can instantly 'undo' an otherwise effective brief . . . will certainly cast doubt on your credibility, may draw sanctions . . . and may well cause you to *lose the case.*" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 9.27, p. 9-8.)

Second, the opening brief fails to provide proper citations to the record.  The Rules of Court require each brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  (Cal. Rules of Court, rule 8.204(a)(1)(C).)  Osborne's record citations merely point to certain pages or paragraphs in documents such as the "Trial Court Minute Order Granting Defendant's Motion for Summary Judgment, pp. 10, 11, 13, 14, 16" or "Souris [Decl.] ¶9."  Violations of Rule 8.204(a)(1)(C) may result in us striking portions of the brief that lack proper citations and deeming the accompanying argument waived.  (See *Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1190–1191 (*Young*).)

Osborne devotes a significant portion of her brief to the trial court's alleged failure to view the facts in the light most favorable to her and its purported disregard of "clear disputes of material fact."  She points to several instances where her declaration conflicts with a declaration from a County witness, and faults the trial court for accepting the County's version of facts over hers.  However, Osborne failed to support this argument with proper citations to the record.  For instance, she argues there is a disputed issue of material fact regarding her knowledge of the reason the County placed her on administrative leave, and cites "Osborne Decl. ¶22" and "Respondent's Separate Volume of Documentary Evidence, Exhibit P."  It is difficult, if not impossible, to evaluate disputed issues of material fact without clear citations to the record.  Osborne has forfeited this argument.  (See *Young, supra*, 24 Cal.App.5th at pp. 1190–1191.)

Even assuming Osborne had provided proper record citations, we would reject her argument that the trial court should have found triable issues of material fact from the

conflicting declarations. In the summary judgment context, triable issues of material fact only exist where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra*, 25 Cal.4th at p. 850.) Osborne's uncorroborated and self-serving declaration reflecting her subjective beliefs about the County's alleged misconduct is insufficient to create a genuine issue of fact. (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.) Giving Osborne the benefit of the doubt does not require us to turn a blind eye to the County's undisputed facts that undermine her theory of the case. (See *ibid.*)

The only other argument Osborne raises is that the trial court erred in applying the six-month statute of limitations from the Government Tort Claims Act to her FEHA claims. We agree with the County that the trial court's error here was harmless because valid grounds justify summary judgment on each of Osborne's claims.

With respect to Osborne's claims for disability discrimination and FEHA retaliation, we assume, without deciding, that Osborne could make a prima facie case for each cause of action. Nonetheless, the record shows that the County had legitimate, nondiscriminatory reasons to place her on administrative leave and restrict her from working with patients. In April and May 2017, Osborne had multiple unscheduled absences and sent her supervisor about 60 bizarre text messages. The absences alone were in violation of County workplace policies. In investigating Osborne's absences, the County learned of her drug abuse. These are legitimate, nondiscriminatory reasons, supported by competent and admissible evidence,

9

sufficient to defeat Osborne's claims.  (See *Guz*, *supra*, 24 Cal.4th at p. 360; see also *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1020–1021 (*Scotch*).)

Osborne's claims for failure to accommodate and failure to engage in the interactive process are likewise contradicted by evidence in the record.  Osborne admitted to using cocaine and alcohol in April and May of 2017, and that someone using these drugs could not perform the duties of a psychiatric social worker.  This admission prevents her from establishing her ability to perform the essential job duties of a psychiatric social worker—a necessary element of her claim for failure to accommodate.  (See *Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971.)  The record also reflects that Osborne did not ask for any accommodations until the County assigned her to the Laundry Services job, and she did not ask for an interactive process meeting until February 2020.  Upon her request, the County agreed to re-evaluate her fitness for duty, but Osborne resigned two months later, before any re-evaluation could take place.  Thus, she cannot prevail on her claim for failure to engage in the interactive process.  (See *Scotch*, *supra*, 173 Cal.App.4th at pp. 1013–1014.)

Osborne's final claim for failure to prevent discrimination and retaliation fails because the record lacks any evidence of discrimination or retaliation.  (See *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 288–289.)

///

///

10

## DISPOSITION

We affirm the judgment and award costs to the County.


WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.

11